**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES L. GLOVER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOUIS DeJOY, U.S. Postmaster General | : | NO. 20-1913 |

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                                    September 23, 2022

  This employment discrimination action brought under Title VII of the Civil Rights Act of 1964 (Title VII) and the Rehabilitation Act (RA) arises out of *pro se* plaintiff James Glover's employment with the United States Postal Service ("USPS").[1]  He alleges that he was denied assignment to his desired route and reassigned to a new postal station on the basis of his race, color, religion, gender and national origin in violation of Title VII.  He also contends that USPS failed to accommodate his ADD disability when it refused to transfer him to a more familiar route.

  Moving for summary judgment, USPS contends that the undisputed facts show that Glover's reassignment and later termination had nothing to do with discrimination but was the result of his refusal to report to work.  USPS also argues that Glover has failed to establish his failure to accommodate claim under the RA, citing the lack of an appropriate and available position to transfer him.

  Glover has not shown that his termination was because of discrimination.  Instead, the undisputed facts show that he was terminated because he refused to report to work.

---

[1] U.S. Postmaster General Louis DeJoy is also a named defendant.  He substituted former U.S. Postmaster General Megan J. Brennan as a defendant.  *See* July 22, 2021 Order, ECF No. 24.  We shall refer to USPS for simplicity.

Nor has he shown that USPS failed to offer a reasonable accommodation.  Therefore, we shall grant the motion for summary judgment.

## Factual Background[2]

Glover was employed with the United States Postal Service ("USPS") as a City Carrier Assistant 2 ("CCA") in Philadelphia, Pennsylvania from November 29, 2014, until his termination on February 9, 2017.[3]

A CCA is a non-career letter carrier hired to work at a specific postal installation.[4] CCA is a flexible position involving varying route assignments based on USPS's situational needs.[5]  A CCA's schedule generally changes from day to day or week to week.[6]  CCAs work different stations and hours as needed.[7]  Like city letter carriers and carrier technicians, CCAs "deliver and collect mail on foot or by vehicle under varying

---

[2] Despite repeated efforts by USPS, Glover has not been deposed.  Def.'s Mem. of Law in Supp. of Mot. to Preserve Ability to Depose Pl. After Expiration of Fact Disc. Deadline and for a Protective Order at 2, ECF No. 26.  After several unsuccessful attempts to schedule his deposition, Glover finally agreed to a date of October 15, 2021.  *Id.*  Because he claimed he had COVID-19, the deposition was postponed and was not rescheduled.  *Id.*  USPS moved to preserve the right to depose Glover after the expiration of the fact discovery deadline.  *Id.* at 2–3.  Although we granted the motion, no deposition took place.  Nov. 24, 2021 Order, ECF No. 27.

[3] Def.'s Statement of Material Undisputed Facts ¶¶ 2, 7, ECF No. 29 ["DSMUF"].

[4] The People of the United States Post Service, ECF No. 35-4 at 1 ["People of the Postal Service"] (attached as Ex. 1 to Pl.'s Resp. to Defs. Mot. for Summ. J., ECF No. 35 ["PRDSMUF"]); Working in Another Installation, ECF No. 35-4 at 2 (attached as Ex. 2 to PRDSMUF).

[5] EEO Investigative Aff. of Sarah Aytchan at 5, ECF No. 29-4 ["Aytchan Aff."] (attached as Ex. 4 to DSMUF) (stating that "CCAs are required to work flex hours and @ different facilities where needed" and that "CCAs are flex workforce, when they are hired they were informed of the duties of the position which include working different stations + hours as assigned"); EEO Investigative Aff. of Yolanda Wiley at 4, ECF No. 29-12 ["Wiley Aff."] (attached as Ex. 12 to DSMUF) (explaining that "as a Carrier Assistant you normally do not have a permanent assignment, you fill in where needed"; Working in Another Installation, ECF No. 35-4 at 2 ("[T]here are circumstances when a CCA may be required to occasionally work in another installation in the local travel area . . ."); Hours of Work, ECF No. 35-5 at 7 (attached as Ex. 17 to PRDSMUF).

[6] Hours of Work, ECF No. 35-5 at 7.

[7] Aytchan Aff. at 5; Wiley Aff. at 4.

road and weather conditions in a prescribed area."[8]  Unlike regular carriers, they are not permanently assigned to a location and route.

CCAs may request to serve a temporarily vacant full-time assignment, also known as a hold-down assignment, that has been vacant for at least five days because the regular carrier is on vacation or sick.[9]  In that case, the CCA serves the route until the regular carrier returns.  CCAs may also apply for assignment to a route that has no regular letter carrier and no eligible letter carrier has applied to fill the position.[10]  To apply, CCAs must submit a written request to their supervisor.[11]  The most senior CCA applicant, based on hiring date, is awarded the hold-down assignment.[12]

*Grievances, Hold-Downs, & Reassignments*

Glover was initially assigned to Philadelphia Main Office Delivery ("MOD"). Because he preferred working postal routes with which he was most familiar, he requested hold-down assignments on those routes.  After his hold-down requests were denied, Glover complained to management.  As a member of the National Association of Letter Carriers, AFL-CIO (the "Union"), which has a collective bargaining agreement with USPS,[13] he exercised his right to file a grievance and joined a class grievance.  The grievance resulted in a settlement in which Main Office Delivery management agreed that

---

[8] The People of the United States Postal Service, ECF No. 35-4 at 1.

[9] Opting and Hold-Downs, ECF No. 35-4 at 3 (attached as Ex. 3 to PRDSMUF).

[10] *Id.*

[11] *Id.*

[12] *Id.*; *see also* Seniority Report, ECF No. 29-17 (attached as Ex. 17 to DSMUF).

[13] DSMUF ¶¶ 3–4.

"CCAs who demonstrated that they predominately worked in zones 19103 and 19102 for 2 consecutive weeks w[ould] be permitted to put in a hold down."[14]

After the settlement, Glover requested and was awarded a hold-down on route 222 at Main Office Delivery.[15]  He began his hold-down route on September 17, 2016.[16]  Less than one month later, the regular carrier returned.[17]  That same day, Glover was reassigned to the Point Breeze Station to accommodate USPS staffing needs.[18] Nonetheless, he requested another hold-down assignment at Main Office Delivery the next day.[19]  Given his reassignment, his request was denied.[20]

Glover grieved this decision.  The grievance team determined that there had been no violation of the collective bargaining agreement, reasoning that Glover was only allowed to request hold-downs in his assigned delivery unit.[21]  Because he was assigned to Point Breeze Station, Glover was ineligible for hold-down routes at Main Office Delivery.

Glover believed his reassignment was in retaliation for opposing USPS's practice of awarding unofficial hold-down routes.  By written notice, dated October 14, 2016, he

---

[14] Step "A" (Formal) DRT Settlement, No. 157-103-1305-2016, at 2, ECF No. 29-6, ["Class Action Grievance Settlement"] (attached as Ex. 6 to DSMUF).

[15] Step B Decision, No. C11N-4C-C17025760, at 1, ECF No. 29-3 ["Hold-Down Grievance Decision"] (attached as Ex. 3 to DSMUF); Granted Hold-Down Requests for Sept. 17, 2016, ECF No. 35-5 at 7 (attached as Ex. 6 to PRDSMUF).

[16] Hold-Down Grievance Decision at 1.

[17] *Id.*; Step B Decision, No. C11N-4C-D17335524, at 5, ECF No. 29-2 ["Termination Grievance Decision"] (attached as Ex. 2 to DSMUF).

[18] Letter from Bianka Evans, Customer Services Supervisor to James Glover (Oct. 11, 2016), ECF. No. 35-6 at 9 (attached as Mis. 1 to PRDSMUF); *see also* Termination Grievance Decision at 4; Hold-Down Grievance Decision at 1–2; Aytchan Aff. at 25.

[19] Hold-Down Grievance Decision at 1.

[20] *Id.*

[21] *Id.* at 1–2.

notified USPS of his "refus[al] to follow orders to be reassigned & work at Point Breeze Station because of discriminatory practices by Area Manager, Station Manager and zone 3 supervisor."[22]  He refused to report to work.  He accrued 236 hours, or 29.5 days, of unauthorized absences between October 15 and November 25.[23]  He also failed to attend pre-disciplinary interviews.[24]  Consequently, on December 6, 2016, USPS notified Glover that he was terminated.[25]

Glover filed a grievance.[26]  The grievance team determined that there was just cause for Glover's termination because he had "failed to obey management's order to report to work at Point Breeze Station and has remained AWOL."[27]  He was given until February 9, 2017 to resign or his termination would become permanent on that date.[28]  Glover did not resign.  He was terminated on February 9, 2017.[29]

*Reasonable Accommodation Requests*

In May 2016, Glover submitted the following request for a reasonable accommodation: "I request to remain at my current station [Main Office Delivery]. Working on open truck route such as 307, 228, and 494.  James Glover requesting a reasonable accommodation for disability.  Disability type: ADHD."[30]  The Philadelphia District Reasonable Accommodation Committee ("DRAC") invited him to participate in its

---

[22] Notice of Reassignment Refusal, ECF No. 29-10 (attached as Ex. 10 to DSMUF).

[23] Termination Grievance Decision at 3.

[24] Termination Grievance Decision at 2.

[25] *Id.* at 1–2.

[26] *Id.* at 1.

[27] *Id.* at 4.

[28] *Id.*

[29] DSMUF ¶ 7.

[30] May 2016 Request for Accommodation, ECF. No. 29-11 (attached as Ex. 11 to DSMUF).

interactive process to assess whether he was a qualified individual with a disability entitled to reasonable accommodations.[31]   DRAC scheduled a meeting for June 30, 2016.[32]

DRAC Coordinator Yolanda Wiley sent Glover a letter, dated July 8, 2016, cancelling the meeting and closing his case.[33]  She explained that she had "contacted [his] Station manager and was informed that [he] submitted medical documentation clearing [him] fit for full duty and in no need for accommodations."[34]  The June 9, 2016 doctor's note stated: "James Glover was under my care from 5-13-16 through 6-7-16.  He may return to full duty work without accommodations.  He was unable to work during that time."[35]

In October 2016, Glover renewed his accommodation request.[36]  By two letters, both dated November 4, Wiley acknowledged Glover's request and instructed him to submit medical documentation from his treating physician regarding his disability.[37]  He was also invited to participate in DRAC's interactive process on November 9.[38]  At his

---

[31] Letter from Yolanda Wiley, Coordinator, Reasonable Accommodation Committee, to James Glover (July 8, 2016), ECF No. 29-13 ["Wiley July Letter"] (attached as Ex. 13 to DSMUF).

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] Gary R. Salzman, D.O., Doctor's Note (June 9, 2016), ECF. No. 29-14 ["June Doctor's Note"] (attached as Ex. 14 to DSMUF).

[36] Wiley Aff. at 7.

[37] Letter from Yolanda Wiley, Coordinator, Reasonable Accommodation Committee, to James Glover, Subject: Request for Medical Information (Nov. 4, 2016), ECF No. 35-5 at 14 (attached as Ex. 22 to PRDSMUF); Letter from Yolanda Wiley, Coordinator, Reasonable Accommodation Committee, to James Glover, Subject: Reasonable Accommodation Meeting Notice (Nov. 4, 2016), ECF No. 35-5 at 15 ["Wiley Reasonable Accommodation Meeting Notice Letter"] (attached as Ex. 23 to PRDSMUF).

[38] Wiley Reasonable Accommodation Meeting Notice Letter.

request, the meeting was rescheduled because he did not yet have his medical documentation.[39]

On November 29, Glover submitted a "Confirmation of Request for Reasonable Accommodation" form to DRAC, requesting the following accommodation:

> To be assigned to Main Office Delivery where I am most comfortable at and most familiar with.  The open/vacant route's [sic] that I am familiar with are 222 or 399.  I would like route 222 because it is that route I am most familiar with and has a 8am start time.  Route 399 is an open aux route that I am very familiar with as well but it has a 10:00am start time and would ca[u]se me to go home later.[40]

The stated reason for his request was: "Harassment by manager at current station, grandfather's death, filing of formal EEO complaint, [and] fear of retaliation."[41]  He again cited ADHD as his impairment, referring to a November 28, 2016 letter from his doctor, which stated:

> James Glover was seen in my office today for evaluation of his Attention Deficit Disorder.  Over the past several months Mr. Glover has developed stress and anxiety related to increasing friction at work, between himself and his supervisor.  Mr. Glover believes that he is being harassed.
>
> Due to Mr. Glover[']s Attention Deficit Disorder, it would be beneficial for him to be assigned to a a [sic] familiar route, until a permanent route can be assigned.  This would help alleviate the stress and anxiety he has developed since the recent passing of his Grandfather.
>
> Mr. James Glover also feels very strongly that he will have retaliation from his job, as a result of filing for Reasonable Accommodation request.

---

[39] Wiley Aff. at 7

[40] James Glover, Confirmation of Request for Reasonable Accommodation (Nov. 29, 2016), at 2, ECF No. 29-15 ["Accommodation Confirmation Req."] (attached as Ex. 15 to DSMUF).

[41] *Id.* at 3.

> The duration of the restrictions will be in effect for the next year.  Mr. Glover[']s prognosis remains guarded with respect to further symptomatology.  He will remain under my care.[42]

At a DRAC meeting on December 15, Glover's situation was discussed with the Point Breeze station manager, who assured him that he could return to work when he was ready and she would work with him.[43]  At a second meeting held on December 22, the Point Breeze station manager reiterated that "she would work with him as he became familiar with his new route, as that was the request of his doctor, that he be given a route he is familiar with."[44]

On January 6, 2017, Wiley sent a letter to Glover explaining the DRAC's decision:

> This letter is in response to your request for reasonable accommodation.
>
> The purpose of reasonable accommodation is to enable qualified individuals with disabilities to perform the essential functions of a job. The Committee has approved your request, per Sylvia Gaston, the Station Manager of the Point Breeze Post Office.
>
> As a CCA, your restrictions should not interfere with you performing the essential functions of your duties. Management will monitor you regularly to ensure you are not being challenged with work conditions, which may pose as unsafe due to your disability; management will also need your input on the same. Management will attempt to place you in a CCA position which may not be too strenuous for you to become familiar with.
>
> Your Doctor stated the following:

---

[42] Letter from Gary R. Salzman, D.O., to Yolanda Wiley, LRS, Coordinator, Reasonable Accommodation Committee (Nov. 28, 2016), ECF No. 35-5 at 17 ["Salzman Nov. Letter"] (attached as Ex. 25 to PRDSMUF).

[43] Wiley Aff. at 7.

[44] *Id.*

> ***"It would be beneficial for him to be assigned to a familiar route, until a permanent route can be assigned."***

> As a CCA you cannot be assigned to a permanent position at this time. Please note that accommodations require review to ensure that they remain effective and may be adjusted for legitimate business reasons as allowed by law.

> It has been a pleasure assisting you in this manner. Any questions or concerns in the future, do not hesitate to let me know.[45]

*EEO Complaint*

On January 25, 2017, Glover filed a formal EEO Complaint with USPS.[46]   He alleged discrimination based on race, color, sex, national origin and religion.[47]   He complained of the following instances of discrimination:

> when (1) on unspecified dates his co-workers were able to maintain their assigned hold-downs, while he was not afforded a similar opportunity and lost his hold-down, when on (2) unspecified dates, his co-workers were afforded more favorable work assignments in Work Zones #2 & #3 than he was, when on (3) unspecified dates he was assigned to fifteen (15) different stations to assist their staffing needs, when on (4) several unspecified dates management sent him home without providing him work hours, when on (5) an unspecified date he was given a Pre-Disciplinary Interview (PDI), regarding his attendance, which subsequently led to him on (6) July 21, 2016, being issued *Letter or Warning for Failure to Maintain Regular Attendance*, when (7) from March 2016 through October 12, 2016, he experienced a hostile work environment from the management team of Main Office Delivery (MOD), which included being told he was a thief, accused [o]f stealing time, being called a criminal and

---

[45] Letter from Yolanda Wiley, Coordinator, Reasonable Accommodation Committee, to James Glover (Jan. 6, 2017), ECF No. 29-16 ["Wiley Jan. Letter"] (attached as Ex. 16 to DSMUF) (emphasis in original).

[46] U.S. Postal Service EEO Dispute Resolution Specialist's (DRS) Inquiry Report, ECF No. 29-8 ["USPS EEO DRS Inquiry Report"] (attached as Ex. 8 to DSMUF); Transmittal of Investigative File Letter to James Glover (Oct. 23, 2017), ECF No. 29-9 (attached as Ex. 9 to DSMUF).

[47] *Id.*

spreading false rumors about him, in an attempt to get him to resign, when on (8) October 12, 2016, he was reassigned from MOD to Point Breeze Station, when on (9) October 15, 2016 through November 10, 2016, he was placed in an Absent Without Leave (AWOL) Status by management, when on (10) October 13th, & 14th, 2016, Postal Police were called on him by management for Failure to Follow Instructions, when on (11) October 21st, 24th, & November 2nd, 2016, management denied his request for religious accommodation to return to Main Office Delivery (MOD), when on (12) November 21, 2016, management issued him a *Notice of Removal for Failure to Maintain Regular Attendance/AWOL/Failure to Follow Instructions*, in which he alleges Manager Gaston "committed fraud and forgery" regarding it's [sic] issue, when on (13) November 22, 2016, he was given notice to report for a PDI, when on (14) December 22, 2016, his reasonable accommodation request was denied by the District's Reasonable Accommodation Committee (DRAC), and when on (15) December 30, 2016, the postal police came to his house and informed him that he was terminated and instructed him to stay off postal property.[48]

After investigating his claims, USPS found no discrimination. Glover timely requested reconsideration. The EEOC affirmed its decision and issued a Notice of Right to Sue Letter, which Glover received on January 13, 2020.[49] Glover filed his complaint in federal district court on April 14, 2020.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[48] *Id.* (emphasis in original).

[49] Compl. for Employment Discrimination at 4, 9, ECF No. 2 ["Compl."].

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003) (citation omitted). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. of Newark N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## Analysis

### Title VII

Because Glover is proceeding under a pretext theory and does not present "direct evidence" of discrimination, his claims are governed by the burden-shifting *McDonnell Douglas* analysis. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095, n. 4 (3d Cir. 1995). He must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted); *Capps v. Mondelez Glob., LLC*, 847, F.3d 144, 151–52, 156 n.12 (3d Cir. 2017); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted). Establishing a *prima facie* case of discrimination "is not onerous and poses a

burden easily met." *C.A.R.S.*, 527 F.3d at 365 (internal quotation marks omitted) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).    Under most circumstances, whether a plaintiff has established a *prima facie* case is a question of law. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

If Glover succeeds in establishing a *prima facie* case, the burden shifts to the USPS to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Willis v. UPMC Child.'s Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir. 1999)); *see also In re Trib. Media Co.*, 902 F.3d 384, 401–02 (3d Cir. 2018).   This burden is "relatively light."   *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Bryan v. Government of Virgin Islands*, 916 F.3d 242, 248 (3d Cir. 2019) (citation omitted).  USPS can satisfy its burden by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."   *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Trib. Media Co.*, 902 F.3d at 401–02 (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 n.2 (3d Cir. 1998)).   The defendant's burden is one of production not persuasion.   *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).   It is not necessary to prove that the proffered reason actually motivated its decision.   *Fuentes*, 32 F.3d at 763.   It need only show that the decision could have been motivated by the proffered legitimate, non-discriminatory reason.   *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

If the USPS satisfies its burden, Glover must then produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination.   *Willis*, 808 F.3d at 644 (citing

*Burton*, 707 F.3d at 426–27).  He may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons."  *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765).  Glover may discredit the USPS's proffered justification by presenting evidence that he was terminated for a discriminatory reason.  *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 324 (3d Cir. 2014) (citing *Fuentes*, 32 F.3d at 764). He can meet his burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination. *Willis*, 808 F.3d at 645 (citing *Fuentes*, 32 F.3d at 764).

In other words, Glover must offer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *In re Trib. Media Co.*, 902 F.3d at 402 (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644–45. The final burden of production "merges with the ultimate burden of persuading [the jury] that []he has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

<u>Disparate Treatment</u>

To establish a *prima facie* case of intentional employment discrimination based on disparate treatment, Glover must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated persons who are nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of unlawful discrimination.

*Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).

Glover satisfies the first two elements.  As an African American, he is a member of a protected class.  He was qualified to work hold-down routes as a CCA-2.

Glover contends that he suffered an adverse employment action when was he was denied certain hold-down routes.  CCAs are not guaranteed hold-down routes.  They must submit a written request and the most senior CCA applicant, based on hiring date, is awarded the assignment.  There is no evidence that Glover was denied a hold-down route in favor of a less senior CCA.

Glover does not appear to claim that his reassignment to another station was an adverse employment action.  In deference to his *pro se* status, we shall address the issue.

Glover's reassignment to Point Breeze Station was not an adverse employment action.  CCAs are non-career letter carriers who are assigned to routes based on USPS's situational needs.  The position is a flexible one.  Reassignments of CCAs are a routine part of the job.  Even if they were not, there was no material change in Glover's employment conditions.  His job title, terms, conditions, and privileges of employment remained the same.

Glover's *prima facie* case also fails at the fourth element.  There is no evidence that similarly situated non-members of the protected class were treated any differently than Glover.  The two persons he claims were treated more favorably are not comparators.  T. Gibson, a Liberian, and F. Desameau, a Haitian, were both CCA-2s.  They performed similar job functions with similar responsibilities.  They had the right to request hold-down routes.  There is one significant difference—seniority.  Gibson and

Desameau were more senior than Glover.  Indeed, Glover admitted that they were "slightly more senior than" him,[50] and USPS's Seniority Report ranks Desameau 123 with a hiring date of November 22, 2014.[51]  Glover, who was hired two days later, is ranked 124.[52]  Because Gibson and Desameau had seniority over Glover, USPS policy and the collective bargaining agreement mandated they be awarded hold-down routes before him.[53]  Their preferential treatment in the assignment of hold-down routes was solely based on seniority.  It was unrelated to their national origin or any other factor.

In his Complaint, Glover also alleges discrimination based on race, religion, color, and sex.[54]  It is unclear whether he asserts disparate treatment based on his membership in those protected classes.  Glover has not identified any comparators that were treated more favorably than him.  There is no evidence that Gibson and Desameau were members of a different race, religion, or color.  Therefore, Glover has not established a *prima facie* case of disparate treatment based on race, religion or color.

Because Glover has not made out a *prima facie* case of intentional discrimination based on disparate treatment, we shall grant summary judgment in USPS's favor on Glover's disparate treatment claim.

---

[50] Pl.'s Resp. to Defs. Mot. for Summ. J. & Mem. at 2, § C, ECF No. 36-1 ["Pl.'s Resp."]; *see also* PRDSMUF ¶ 28 (stating that he "is ranked right underneath F. Desameau in seniority" and has personal knowledge that "T. Gibson is more senior/higher relative standing.")

[51] Seniority Report.

[52] *Id.*

[53] The People of the United States Postal Services, ECF No. 35-4 at 1 ("CCAs . . . can opt on temporary hold-downs . . . based on relative standing."); Opting & Hold Downs, ECF No. 35-4 at 3 ("If no eligible career letter carrier has requested to work the assignment, the opt will be awarded to the eligible CCA with the highest relative standing who requested it and is not already on another opt.").

[54] *See* Compl. at 3, 13

Retaliation

To succeed on a retaliation claim under Title VII, Glover must prove: (1) he engaged in a protected activity; (2) the USPS took an adverse employment action against him after or contemporaneous with his complaint; and (3) there is a causal link between his complaint and the adverse employment action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

Glover engaged in protected activity when he filed a formal EEO Complaint with USPS alleging discrimination on January 25, 2017. Fifteen days later, he was terminated. But, USPS's decision to terminate him was made on December 6, 2016, before he filed his EEO complaint.

Previously, in May 2016, Glover had been part of a class grievance addressing USPS management's refusal to allow CCAs to hold down temporary assignments in Zones 19103 and 19102.[55] The grievance resulted in a settlement. Main Office Delivery management agreed that "CCAs who demonstrated that they predominately worked in zones 19103 and 19102 for 2 consecutive weeks w[ould] be permitted to put in a hold down."[56]

Glover contends that the filing of the class grievance was a protected activity. It was not. It did not allege discrimination based on race, color, religion, sex, or national origin. *See Slagle v. County of Clarion,* 435 F.3d 262, 268 (3d Cir. 2006) (holding that plaintiff's "vague allegations of 'civil rights' violations," without reference to discrimination

---

[55] Class Action Grievance Settlement at 1.

[56] *Id.* at 2.

16

based on any protected category, did not constitute protected conduct under Title VII); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (holding that plaintiff's "general complaint of unfair treatment d[id] not translate into a charge of illegal *age* discrimination" under the ADEA) (emphasis in original). Therefore, the class grievance cannot support a retaliation claim under Title VII.

To the extent that Glover identifies his reassignment to the Point Breeze Station as the adverse employment action, there is no causal connection between his reassignment and the EEO Complaint. Glover filed his EEO Complaint after his reassignment to the Point Breeze Station.

The same is true of Glover filing a EEOC Complaint. Although it was a protected activity, he filed it on January 12, 2018—nearly a year after his termination. Thus, there is no causal connection between Glover's termination and the EEOC Complaint.

Even if Glover established a *prima facie* case, the burden shifts to USPS to articulate a legitimate nondiscriminatory reason for his termination. It has done so. After his reassignment to the Point Breeze Station, Glover refused to report to work. After accumulating substantial unauthorized absences between October 15 and November 25, 2016, he was terminated.

Glover has not produced evidence suggesting that USPS's legitimate nondiscriminatory reason is pretext for retaliation. He was reassigned to the Point Breeze Station in early October 2016. On October 14, he notified USPS that he refused to work at the new station, citing alleged but unspecified discriminatory practices of two managers and a supervisor. He never reported to work.

After Glover amassed 29.5 days of unauthorized absences between October 15 and November 25, USPS notified him on December 6 that he would be terminated.  The termination notice listed the dates, total hours, and type of absences.  It noted that he had failed to attend three pre-disciplinary interviews and documented his prior seven-day suspension in September 2016.  Given his absences, failure to cooperate and prior disciplinary record, he was terminated.

Glover grieved his termination.  In upholding the termination, the grievance team explained its decision:

> According to the file CCA Letter Carrier Glover was reassigned to Point Breeze Station on October 1, 2016.  He was working at Main Office Delivery (MOD).  He remained at MOD because he was on a hold down of route 222.  On October 11, 2016 the hold down was terminated when the regular letter carrier on route 222 returned to MOD.  On October 12, 2016, Letter Carrier Glover was instructed to report to Point Breeze Station.

> The file has a written notice from Letter Carrier Glover dated October 14, 2016.  Letter Carrier Glover states *"I am refusing to follow orders to be reassigned and work at Point Breeze Station because of discriminatory practices by Area Manager, Station Manager and zone 3 supervisor."*

> Letter Carrier Glover filed official protests to management's reassignment orders.  However, Letter Carrier Glover has failed to obey management's order to report to work at Point Breeze Station and has remained AWOL.

> Taking the stated facts into consideration, the Step B Team agrees there is just cause for the notice of removal.  Management did not violate Article 16 of the national agreement.[57]

---

[57] Termination Grievance Decision at 4 (emphasis in original).

Glover was given the opportunity to resign rather than be fired.  The grievance team directed him to "submit the resignation form to the Point Breeze Post Office no later than February 9, 2017."[58]  He did not.  Therefore, his termination became effective on that date.

Glover has offered no evidence to show that the grievance decision was based on any reason other than his refusal to report to work.  Nor has he presented any evidence justifying his excessive absences.  On the contrary, he admits he refused to work.  His conclusory reference to unspecified discriminatory practices by two managers and a superior as a reason for not showing up at work is insufficient.

Because Glover has not produced any evidence of pretext, we shall grant USPS summary judgment as to his retaliation claim.

<u>Religious Discrimination</u>

To establish a *prima facie* case of religious discrimination under Title VII, Glover must show that he: (1) holds a sincere religious belief that conflicts with a job requirement; (2) informed USPS of the conflict; and (3) was disciplined for failing to comply with the conflicting requirement.  *Groff v. DeJoy*, 35 F.4th 162, 168 (3d Cir. 2022) (citing *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010)).

Glover claims that as a Christian he had a sincere religious belief that prohibited him from working assignments that were illegal and discriminatory.  He contends he could not accept transfer to the Point Breeze Station because it was a discriminatory assignment.  His notice dated October 14, 2016, merely stated: "I am refusing to follow orders to be reassigned & work at Point Breeze Station because of discriminatory

---

[58] *Id.*

practices by Area Manager, Station Manager and zone 3 supervisor."[59]  At no time did he claim he had a religious belief.  Nor has he addressed his claim in his response to the USPS's motion.   Thus, USPS is entitled to summary judgment on the religious discrimination claim.

<u>Hostile Work Environment</u>

To succeed on a hostile work environment claim, Glover must establish that: (1) he suffered intentional discrimination because of his protected status; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is *respondeat superior* liability.  *Minarsky v. Susquehanna County*, 895 F.3d 303, 310 (3d Cir. 2018) (quoting *Mandel*, 706 F.3d at 167).

A hostile work environment claim does not exist by itself.  *Mandel,* 706 F.3d at 167. It must be related to unlawful intentional discrimination.  *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (holding the plaintiff must establish that he "suffered intentional discrimination because of" his protected activity), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  In other words, the harassment must be motivated by a discriminatory animus.

Glover claims that he was subject to a hostile work environment from March 2016 through October 2016 when the management team at Main Office Delivery called him a thief and criminal, accused him of stealing time, and spread false rumors about him to force his resignation.[60]   He also contends that USPS management harassed him by

---

[59] Notice of Reassignment Refusal.

[60] USPS EEO DRS Inquiry Report.

calling him names, violating policy and law, calling the police on him, and sending him home.[61]

Not all workplace harassment violates Title VII.  Indeed, Title VII "does not set forth 'a general civility code for the American workplace.'"  *Burlington*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  It does not prohibit "all verbal or physical harassment in the workplace."  *Oncale*, 523 U.S. at 80.  Only harassment motivated by a discriminatory animus is prohibited.  *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)); *see also Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (citation omitted).  In other words, the harassment must be instigated by unlawful discrimination.

Although Glover claims he was harassed because of his race, color, religion, sex, and national origin, he was not produced any evidence to support his claim.  He does not point to any specific comment or action related to his race, color, religion, sex, or national origin.  Nor does he present any evidence that the alleged harassment could have been reasonably interpreted as being directed at him for one of those reasons.  Therefore, USPS is entitled to summary judgment on the hostile work environment claim.

*Rehabilitation Act*

In his Complaint, Glover asserted a cause of action under the Americans with Disabilities Act.[62]  It is the RA, not the ADA, that applies to federal agencies.  *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) ("In clear statutory language, Congress

---

[61] Pl.'s Resp. at 4, § F.

[62] Compl. at 1.

established that USPS is part of the federal government and that the entire federal government is excluded from the coverage of the ADA." (citation omitted)); *see also Venter v. Potter*, 435 F. App'x 92, 95 n.1 (3d Cir. 2011) (citation omitted).  Because Glover is proceeding *pro se*, we shall construe his claim as arising under the RA.

Section 504(d) of the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 . . . as such sections related to employment."  29 U.S.C. § 794(d) (citations omitted).

To make out a claim for failure to accommodate a disability, Glover must produce evidence that: (1) he was disabled; (2) his employer knew it; (3) he requested an accommodation; (4) his employer did not make a good faith effort to accommodate his disability; and (5) he could have been reasonably accommodated.  *Capps*, 847 F.3d at 157 (citations omitted).

Glover had ADD and USPS knew it.  Glover submitted a doctor's note stating that he had ADD with his November 2016 request.   Twice Glover requested an accommodation.  Both requested transfers to more familiar routes.

To succeed on a failure-to-transfer claim, Glover must show that: (1) there was a vacant position; (2) the position was at or below the level of his former job; and (3) he was qualified to perform the essential duties of the vacant job with reasonable accommodation.  *Shapiro v. Township of Lakewood*, 292 F.3d 356, 360 (3d Cir. 2002) (quoting *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 230 (3d Cir. 2000)).

In May 2016, Glover submitted a written request stating "I request to remain at my current station [Main Office Delivery].  Working on open truck route such as 307, 228, and 494.  James Glover requesting a reasonable accommodation for disability.  Disability type: ADHD."[63]  After receiving his request, the Philadelphia District Reasonable Accommodation Committee ("DRAC") invited Glover to a meeting to determine whether he was entitled to a reasonable accommodation.  The meeting was cancelled after Glover submitted medical documentation stating that "[h]e may return to full duty work without accommodations."[64]  Therefore, there is no failure to accommodate claim based on his May 2016 request.

Glover renewed his accommodation request in November 2016, seeking a transfer from Point Breeze Station to Main Office Delivery for ADD related stress and anxiety.  He identified routes 222 and 399 as vacant positions.  USPS does not dispute that these routes were vacant.  Instead, it counters that Glover was not qualified for a permanent position.  Glover "requested a familiar, permanent route at Main Office Delivery."[65]  As USPS correctly points out, because "a permanent route [was] antithetical to the very nature of [Glover's] flexible CCA-2 position and the seniority requirements of hold-down routes,"[66] it could not transfer Glover.  He was not eligible for a permanent route.  Allowing Glover to bypass employees with more seniority would violate USPS policy and the collective bargaining agreement.

---

[63] May 2016 Request for Accommodation.

[64] June Doctor's Note; *see also* Wiley July Letter.

[65] Mem. of Law in Supp. of Def.'s Mot. for Summ. J. & for a Stay at 13, ECF No. 28.

[66] *Id.*

By his own statements, Glover sought a familiar route for his own personal benefit, not to accommodate his disability.  Indeed, he requested route 222 over route 399 because the latter route had a later start time, resulting in his getting home from work later.  USPS has no duty to provide accommodations for an employee's personal benefit or convenience.  *See Boykin v. ATC/Vancom of Colo., L.P.*, 247 F.3d 1061, 1065–66 (10th Cir. 2001) (employer was not required to accommodate plaintiff's school schedule).

Both parties must engage in "a flexible, interactive process" and "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (citation omitted).  An employer can show its good faith "in a number of ways," including, as USPS did here, soliciting information about the disability and the limitations it places on the employee, asking the employee what accommodation he wants, considering his request, and offering an alternative accommodation.  *Id.* at 317.  The interactive process does not "dictate that any particular concession must be made by the employer." *Id.*

In November 2016, upon receiving Glover's request for accommodation, Coordinator Wiley requested medical information from his treating physician.  There were two meetings scheduled to consider his request.  At both meetings, the Point Breeze station manager advised him that she was willing to work with him to help him become more familiar with his new route.

The DRAC considered Glover's request and issued its decision.  Glover was informed by letter dated January 6, 2017 that his request for accommodation had been approved.  Explaining that he could not be assigned to a permanent position as a CCA, it offered the following:

> As a CCA, your restrictions should not interfere with you performing the essential functions of your duties. Management will monitor you regularly to ensure you are not being challenged with work conditions, which may pose as unsafe due to your disability; management will also need your input on the same. Management will attempt to place you in a CCA position which may not be too strenuous for you to become familiar with.[67]

USPS acted in good faith.  Glover did not.  He refused to come to work while USPS considered his accommodation request.  He was also unwilling to engage in the interactive process and refused to consider alternative accommodations.  Indeed, he rebuffed USPS's offers to work with him to accommodate his ADD.  The only accommodation acceptable to him was transfer to the route of his choice.  When he did not get what he wanted, he refused to report to work.  USPS was never given the opportunity to accommodate him.  Glover ignored his station manager's offer to work with him to become more familiar with his new route.

Given these undisputed facts, Glover has not shown that USPS failed to provide a reasonable accommodation.  Therefore, we shall grant defendant summary judgment on Glover's failure to accommodate claim.

### Conclusion

Because Glover has not established that similarly situated non-members of any protected class were treated differently than him, he has not made out a *prima facie* case of intentional discrimination based on disparate treatment.  Although he made out a *prima facie* case of retaliation, USPS is entitled to judgment because it has articulated a legitimate, non-discriminatory reason for termination which Glover has not rebutted with

---

[67] Wiley Jan. Letter.

evidence of pretext.   Glover's religious discrimination claim fails because he has not shown that he held a sincere religious belief that conflicted with his job requirements.   Nor has he produced evidence of any specific comment or action related to his race, color, religion, sex, or national origin that could have created a hostile work environment.   Glover has also not shown that USPS failed to accommodate him or acted in bad faith during the interactive process.   Therefore, we shall grant USPS's motion for summary judgment.